IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 4:20-CR-011 |
| v. | ) |
| | ) GOVERNMENT'S SENTENCING |
| CODY RAY LEVEKE, | ) MEMORANDUM |
| also known as Cody Meyer, | ) |
| also known as Cody Ray Meyers, | ) |
| | ) |
| Defendant. | ) |
| | ) |

The government files this sentencing memorandum in anticipation of the sentencing hearing currently set for Friday, January 29, 2021, at 9:30a.m.

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 2
II.  SENTENCING CALCULATION ................................................................... 2
     A.   Statutory Maximum Sentence ............................................................. 2
     B.   Sentencing Guidelines Calculation ..................................................... 2
III. OUTSTANDING PSR OBJECTIONS ........................................................... 3
     A.   The two-level enhancement applies because Defendant made more than two threats as part of this offense. ...................................................... 3
     B.   The six-level enhancement applies because Defendant threatened a state senator and his threats were motivated by that status. ............ 4
     C.   Defendant should not receive credit for acceptance of responsibility. ... 6
     D.   The proposed special conditions are appropriate ................................ 7
IV.  SENTENCING FACTORS & GOVERNMENT'S RECOMMENDATION ....... 8

## I. INTRODUCTION

Defendant, Cody Ray Leveke, was found guilty by a jury of two counts of interstate communication of a threat, in violation of Title 18, United States Code, Section 875(c). Presentence Investigation Report, ECF No. 259, ¶ 1 (hereinafter "PSR"). There are multiple outstanding objections to the PSR, three of which affect the guideline calculation. The government does not anticipate presenting additional evidence or witnesses at sentencing.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

Based on the guilty verdict as to both counts, Defendant is subject to a maximum sentence of five years in prison and up to three years of supervised release. A fine of up to $250,000 is permitted. PSR ¶¶ 96, 99, 105.

### B. Sentencing Guidelines Calculation

Defendant's guidelines are calculated in presentence report paragraphs 30–38, 46, 97. Defendant's advisory guideline calculation is as follows:

| | |
|---|---|
| USSG §2A6.1(a)(1) (base): | 12 |
| USSG §2A6.1(b)(2)(A) (3+ threats) | +2 |
| USSG §3A1.2(b) (official victim): | +6 |
| Total Offense Level: | 20 |
| Criminal History Category | IV (7) |
| Guideline Sentencing Range: | 51–63 months |

The government agrees with this calculation.

## III. <u>OUTSTANDING PSR OBJECTIONS</u>

Defendant raises multiple objections to the PSR. First, Defendant objects that the two-level enhancement under §2A1.6(b)(2)(A) should not be applied because the offense did not involve more than two threats. Second, Defendant objects that the six-level enhancement under §3A1.2(b) should not be applied because his threats were directed to the legislature as a whole, rather than the senator individually. Def.'s Sent. Memo, ECF No. 260 at 4. Third, Defendant argues he should receive credit for acceptance of responsibility because he only contested whether his words were threats. *Id.* at 5–6. Finally, Defendant objects to the special conditions requiring polygraph testing, sex-offender assessments, and prohibiting possession of internet capable devices as insufficiently tailored to the circumstances of the offense. *Id.* at 10–11.

### A. <u>The two-level enhancement applies because Defendant made more than two threats as part of this offense.</u>

A two-level enhancement applies under 2A6.1(b)(2)(A) if "the offense involved more than two threats." "Threat" as used under this enhancement has the same meaning as in the underlying federal statutes that criminalize threats, which includes the statute Defendant was convicted under: Title 18, United States Code, Section 875. *See United States v. Spring*, 305 F.3d 276, 280 (4th Cir. 2002) (also citing 18 U.S.C. § 844(e) and 18 U.S.C. § 876(c) as statutes criminalizing threats). Specifically, Defendant asserts his third email, contained with PSR paragraph 13, does not constitute a threat. ECF No. 260 at 2–4.

It is undisputed that Defendant was convicted of sending two threats via email to the senator on September 3, 2019, as set forth in PSR paragraphs 8 and 12. Defendant also sent a third email, on September 4, 2019, which also qualifies as a threat. PSR ¶ 10, 13; *see also* Gov't's Exs. 3, 4, ECF Nos. 242-6, 242-7. Much like the jury did, the Court can "consider the language, specificity, and frequency of the [threats]; the context in which the threat was made; the relationship between the defendant and the threat recipient; the recipient's response; any previous threats made by the defendant; and whether, you believe the person making the statement was serious . . . ." Eighth Circuit Model Jury Instruction 6.18.875C. These factors support that the third email Defendant sent on September 4, 2019 is also a threat, regardless of whether it was charged and considered by a jury. *See United States v. Scott*, 441 F.3d 1322, 1326 (11th Cir. 2006) (concluding the two-level enhancement was appropriately applied after the defendant pleaded guilty to one of six counts). Specifically, the email threatens "those that seek to violate the Constitution will be held accountable and will answer to me. Understood?" PSR ¶ 13. When read in conjunction with Defendant's two prior emails and voicemail, Defendant's third email constitutes a threat and the two-level enhancement should be applied.

    B.    <u>The six-level enhancement applies because Defendant threatened a state senator and his threats were motivated by that status.</u>

A six-level enhancement applies under 3A1.2(b) if the victim was "a government officer or employee" and "the offense of conviction was motivated by such status." USSG §3A1.2(a). Defendant disputes that the victim was the senator and insists, as he did at trial, that the victim was the Iowa legislature as a whole, so an

enhancement is not appropriate. Defendant also disputes that his crime was motivated by the status of the senator. ECF No. 260 at 4–5. "Motivation is ultimately a question of fact" and "the victim's official status need not be the sole motivation for the offense." *United States v. Sulik*, 929 F.3d 335, 337 (6th Cir. 2019); *see also United States v. Conaway*, 713 F.3d 897, 902 (7th Cir. 2013) (applying the enhancement where the defendant intended to influence the actions of various federal agencies by using specific threats that showed he "anticipated a response from law enforcement").

Defendant's threatening emails were address only to the senator and were clearly motivated by the senator's official status. At trial, the jury found that Defendant knowingly transmit[ed] in interstate commerce a communication," to "H.Q., an Iowa state senator" "for the purpose of issuing a threat or with the knowledge the communication would be viewed as a threat." *See* Jury Instructions 4–5, ECF No. 234. Defendant's emails centered on legislation the senator attempted to pass in the Iowa legislature, and the actions Defendant planned to take because of the senator's failure to get the legislation passed. PSR ¶¶ 8, 10, 11–13. Defendant sent multiple emails to the Senator, each with the prior email included, and followed up by leaving a voicemail for the senator on his home phone. To demonstrate he was motivated by the senator's status as a lawmaker, Defendant specifically proclaimed the right to "kill politicians when they don't act in accordance to law." PSR ¶ 12. Threatening a specific member of the Iowa legislature—someone with the power to propose and champion legislation—was an integral part of achieving Defendant's perceived goal of changing the Iowa sex offender registration laws.

5

Moreover, even if Defendant's specific intent was to threaten the legislature more broadly, case law supports that "[a] threat does not need to be directed at a named individual to meet the requirements of the official victim enhancement." *United States v. Manns*, 690 F. App'x 347, 353 (6th Cir. 2017) (citing *United States v. Stover*, No. 98-4191, 1998 WL 743593, at *2 (4th Cir. Oct. 23, 1998) (finding that the enhancement applied where the defendant sent a letter to the county prosecutor's office threatening to have two unnamed assistant prosecutors followed and beaten, because the letter sufficiently focused on the two prosecutors who had prosecuted the defendant)). Defendant's threats were "not rants against the government or criminal justice system in general," but instead were specified to members of the Iowa legislature who refused to pass the legislation Defendant wished. *Cf. Manns*, 690 F. App'x at 354. Defendant asked for "an explanation for this illegal behavior, and the names of the individuals responsible for holding the bill up in the house." PSR ¶ 8.

C.  <u>Defendant should not receive credit for acceptance of responsibility.</u>

A two-level reduction applies under 3E1.1(a) if "the defendant clearly demonstrates acceptance of responsibility for his offense." The guidelines note that a two-level reduction may still be applied "in rare situations . . . where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt . . . ." USSG §3E1.1(a), n.2. 383. While Defendant stipulated, and testified, that he was in fact the person who sent the emails to Senator Quirmbach, Defendant quibbled with the meaning of the words he wrote and his intentions in writing them. Further, Defendant intended to call witnesses who were victims of his recent harassment-

related convictions in Arizona, further demonstrating his intent to shift blame to others for his conduct. *See* Def.'s Trial Witness List, ECF No. 202; Gov't's Resist., ECF No. 221.

    D.    <u>The proposed special conditions are appropriate.</u>

Under 5D1.3(b):

> The court may impose other conditions of supervised release to the extent such conditions
>
> (1) are reasonably related to
>
>> (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>>
>> (C) the need to protect the public from further crimes of the defendant; and
>>
>> (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
>
> (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

Defendant objects to the proposed special conditions of supervised release requiring him to subject to polygraph testing and internet monitoring. ECF No. 260 at 10–11. The condition requiring a polygraph test to determine if further treatment is needed is appropriate based on Defendant has a prior conviction that requires him to register as a sex offender.

Further, Defendant used the internet to commit the instant offense, including to research a news article about a mass shooting and extensively communicate with the senator prior to sending the threatening emails. An internet monitoring condition is appropriate. *See, e.g.*, *United States v. Sullivan*, 588 F. App'x 631, 632 (9th Cir. 2014) (unpublished) (upholding an internet monitoring condition for a defendant convicted of interstate communication of a threat "[b]ecause the use of a computer and the Internet 'was essential to the commission of' [the defendant]'s crime . . . and because the conditions [were] 'not absolute'" (citations omitted)).

## IV. SENTENCING FACTORS & GOVERNMENT'S RECOMMENDATION

The sentencing statutes inform this Court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The Court, in determining the particular sentence to be imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The government recommends a Guideline sentence of imprisonment, followed by a three-year term of supervised release. The Court is familiar with the facts of this

case, having presided over trial and ruled on numerous pretrial motions. Starting as early as 2009, Defendant began communicating with Iowa State Senator Quirmbach by email and occasionally by phone. Defendant sought the senator's assistance to advocate for a legislative change that might allow Defendant to petition and be removed from the sex offender registry in Iowa. Defendant's communications with and including the senator leading up to September 2019, detail paranoid, obsessive, and intensifying behavior. PSR ¶¶ 20–23.

On September 3, 2019, Defendant's communications with the senator escalated in an email titled "Mass Shooting at the Iowa Legislature" addressed solely to the senator. Gov't's Ex. 1, ECF No. 242. Defendant told the senator "I'm angry enough to pull a mass shooting down at the State House" and "Those that conspired to violate my civil rights and the rights of others under color of law should live in fear." *Id.* Defendant then left a voicemail for the senator on his home phone, identifying himself by name and referencing the email he sent, and concluded with yelling. Gov't's Ex. 3, ECF No. 242-6. Defendant sent a second threatening email several hours later. Gov't's Ex. 2, ECF No. 242-3. The email began with a news article about a "loophole" that allowed the individual responsible for the Odessa, Texas mass shooting to obtain an assault rifle. Gov't's Ex. 2A, ECF No. 242-4. The Odessa, Texas mass shooting occurred only four days before Defendant sent the email to the senator. After sharing the link about the recent shooting, Defendant then told the senator "Just know you are powerless to stop it. . . . The police cannot take a gun they don't know about." Gov't's Ex. 2, ECF No. 242-3. The second email concluded by stating: "THE 2ND

AMENDMENT EXISTS SO WE CAN KILL POLITICIANS WHEN THEY DONT ACT IN ACCORDANCE TO LAW." *Id.* The following day, Defendant again emailed the senator, replying in a chain to the previous two emails and saying that "[t]hose that seek to violate the Constitution will be held accountable and will answer to me." Gov't's Ex. 4, ECF No. 242-7.

In response to receiving the threatening emails from Defendant, the senator was fearful and immediately alerted the Story County Sheriff's Office and the Iowa Legislative Minority Leader's Office, actions he had never taken before with any email from any constituent. Gov't's Ex. 5, ECF No. 242-8. The Minority Leader's Office alerted the Iowa State Patrol and took the unprecedented step of informing the other senators about Defendant's threats given their explicit nature.

Defendant's criminal history reveals recent convictions for disorderly conduct and aggravated harassment, in addition to the 2004 conviction that required him to register as a sex offender. PSR ¶¶ 41–43. Defendant's conduct underlying his most recent harassment-related convictions is concerning, especially in light of the present offense and demonstrates a continued disregard for the law. Defendant was on probation at the time he sent the emails to the senator.

The government believes a Guideline sentence would be sufficient but not greater than necessary to accomplish the goals of sentencing.

WHEREFORE, the government requests the Court consider this sentencing memorandum in determining the final sentence of Defendant.

                Respectfully submitted,

                Richard D. Westphal
                Acting United States Attorney

By:   */s/ MacKenzie Benson Tubbs*
       MacKenzie Benson Tubbs
       Assistant United States Attorney
       U.S. Courthouse Annex
       110 East Court Avenue, Suite 286
       Des Moines, IA 50309
       Tel: (515) 473-9300
       Fax: (515) 473-9292
       Email: mackenzie.benson.tubbs@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on January 25, 2021, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
\_\_\_\_U.S. Mail \_\_\_\_ Fax \_\_\_Hand Delivery
\_X\_\_ECF/Electronic filing    \_\_\_Other means
ASSISTANT UNITED STATES ATTORNEY
By: */s/ MacKenzie Benson Tubbs*